DELLA MOORE v. CITY OF ST. PAUL.[1]

February 14, 1901.

Nos. 12,456—(230).

City of St. Paul.

 The provisions of the charter of the city of St. Paul impose upon the municipality the duty to keep in good repair for public use all streets, highways, and bridges within its limits. *Held*:

Fort Snelling Bridge.

 1. That the duty and obligation created by such charter extend to the bridge across the Mississippi river at Fort Snelling, notwithstanding the fact that the bridge, when constructed, was not within the limits of the city, and that the statute under which it was constructed (Sp. Laws 1876, c. 125) imposed such duty upon the county of Ramsey.

Extension of City Limits.

 2. The limits of the city were subsequently extended to include this bridge, and it is *held* that the duty imposed upon the city to keep all bridges and streets within its limits in good repair became operative as to this particular bridge and the highway leading to it the moment the same were included within its limits.

Action in the district court for Ramsey county to recover $1,500 damages for personal injuries. The case was tried before Bunn, J., and a jury, which rendered a verdict in favor of plaintiff for $350. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*James E. Markham* and *Franklin H. Griggs*, for appellant.

*C. D. & Thos. D. O'Brien*, for respondent.

BROWN, J.

This action is one to recover damages for injuries to the person of plaintiff, caused, as she alleges, by the negligence of defendant. There is no controversy about the facts in the case. Plaintiff resides in the county of Hennepin, near Fort Snelling, and on the day of the accident was crossing the bridge leading from Fort Snelling to the city of St. Paul, and when on the east end thereof,

[1] Reported in 85 N. W. 163.

and within the limits of said city, she tripped on a nail or spike in the floor of the bridge, and fell, and received the injuries complained of. She had a verdict in the court below, and defendant appeals from an order denying a new trial.

There is but one question in the case. No point is made but that the bridge is within the limits of the city, and upon and a part of one of its streets, and there is no question but that it was defective and out of repair at the point where the accident happened, and, if it was the duty of defendant to keep the bridge in repair (or that portion within its limits, the east one-half thereof), there is no question but that it was negligent in the premises, and liable to plaintiff. The bridge was constructed in the year 1876, under and pursuant to chapter 125 of the Special Laws of that year. This act contains the following provision:

"That said bridge ˙ * * * when constructed shall be kept in good order and repair by the county of Ramsey, as a free bridge. * * * That said commissioners upon the completion of said bridge and when the same is opened for public travel, shall surrender the same to the commissioners of said Ramsey county, and thereupon the same shall be considered in charge of said county for repair and protection."

The bridge was not, at the time it was constructed, within the limits of the city of St. Paul, but was undoubtedly a St. Paul and Ramsey county enterprise, and the provision imposing the duty to keep it in repair upon Ramsey county was in all probability inserted in the act to protect the county of Hennepin opposite the river over which the bridge extends, because the bridge was of no particular public benefit to that county. However, the limits of St. Paul were extended in 1887 to include all the township of Reserve, and this included the east end of the bridge. It is claimed on the part of appellant that, because of the terms of the act of the legislature under which the bridge was constructed, the sole duty to keep the bridge in repair for public use is with the county of Ramsey, and that the city is under no obligation in that behalf.

The charter of the city of St. Paul provides:

"The common council shall have the care, supervision and con-

trol of all public highways, bridges, streets, * * * and shall cause all streets which may have been opened and graded under the authority of said city, or with its assent, to be kept open and in repair and free from nuisances." Sp. Laws 1874, p. 37 (subc. 4, § 7).

It further provides:

"And it is hereby made the duty of said board [board of public works], through its said assistant, said engineer, and under the supervision of the council, as aforesaid, at all times to have and keep all the sidewalks, streets, lanes, bridges, alleys and public levees in a cleanly condition, passable and safe for public use and travel." Sp. Laws 1891, p. 220 (subc. 7, § 12).

These provisions of the charter impose the absolute duty on the city to keep all streets, highways, and bridges within its limits in good repair for public use. It is immaterial when they became a part of the charter. The fact remains that they are a part thereof, and were such at and before the time of this accident, and impose the duty stated upon the city. It is true that the city was under no duty or obligation to keep the bridge in question in repair prior to the time of the extension of its limits, as above stated, but it seems very clear to us that the obligation to do so came with the extension of the limits by which the bridge was brought within its jurisdiction. The moment the limits of the city were extended so as to include the bridge and the highway of which it forms a part, that moment the obligation and duty created by the provisions of the charter became operative upon the city, notwithstanding the fact that the special law under which the bridge was constructed imposed the same duty upon the county of Ramsey. The obligation of the city with respect to the public is precisely the same as though the special law did not provide that the county should keep the same in repair. There may be a concurrent liability on the part of the city and county, but the city cannot escape its responsibility on the claim that the county is also liable.

There are undoubtedly other streets now within the city, but which were county or township roads prior to the time the territory traversed by them was included within the city limits, and,

if appellant's position be sound, the city owes the public no duty to keep them in repair, because the general statutes of the state imposed such duty upon the township in which they were located before being attached to the city, and no express enactment of the legislature is found transferring or changing such duty and obligation from the township to the city. We cannot concur in that view of the law. The provisions of the charter above referred to must be construed as placing upon the city the obligation to keep every highway and bridge within its limits in good repair for public use, without regard to what the law may have required in that respect prior to the time such highways and bridges came within the jurisdiction of the city.

In the case of Daniels v. Mayor, 54 Ga. 79, it appeared that the bridge, though within the limits of the defendant city, was constructed by, and was the property of, the county in which the city was located, and there was no statute imposing the duty on the city to keep it in repair, and, because of the absence of the statutory liability, the court there held the city not liable. In the case at bar we have pointed out the statutory duty imposing generally upon the city the duty of keeping all its streets and bridges in good repair. The Georgia case is not, therefore, in point.

Order affirmed.